IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CECIL LITTLE,<br><br>             Petitioner,<br><br>vs.<br><br>ED SHELDON, WARDEN<br><br>             Respondent. | CASE NO. 3:20-cv-02527-BYP<br><br>DISTRICT JUDGE<br>BENITA Y. PEARSON<br><br>MAGISTRATE JUDGE<br>JAMES E. GRIMES JR.<br><br>**REPORT &**<br>**RECOMMENDATION** |

Pro se Petitioner Cecil Little filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. Doc. 1. Little is in custody at the Richland Correctional Institution serving a sentence imposed by the Lucas County Court of Common Pleas in *State v. Little*, Case No. CR-0201503145. *See* Doc. 8-1, at 32–33 (Ex. 8). This matter has been referred to a Magistrate Judge under Local Rule 72.2 for the preparation of a Report and Recommendation. For the following reasons, I recommend that the Petition be denied.

**Factual background**

In habeas corpus proceedings under 28 U.S.C. § 2254, factual determinations made by state courts are presumed correct. 28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that presumption by clear and convincing evidence. *Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012).

The Ohio Court of Appeals for the Sixth Appellate District summarized the facts prior to Little's indictment as follows:

> {¶ 2} The facts are not in dispute. Little was arrested in the city of Toledo on October 31, 2015, for selling a controlled substance to an undercover police officer for $2,000. After the sale, when the police attempted to arrest him, Little fled the scene by car and eventually crashed. At the time of his arrest, the police confiscated two additional bags of white powder, multiple pills[,] and marijuana.
>
> {¶ 3} All three bags of white powder were tested and analyzed: the one that Little sold to the police and the two in his possession at the time of arrest. According to the laboratory report, the first bag contained 46.23 grams of "Benzocaine;" the second bag contained 14.90 grams of Benzocaine and Cocaine Hydrochloride; and the third bag contained 6.52 grams of Benzocaine. As to the second bag, the report did not specify what percentage of the substance tested was Benzocaine and what percentage was Cocaine Hydrochloride. Benzocaine is a local anesthetic; it is not a controlled substance under Ohio law. It is, however, one of many common "filler" drugs that are used to dilute the purity of cocaine. State v. Gonzales, 150 Ohio St.3d 276, 2017-Ohio-777, 81 N.E.3d 419, ¶ 10-11. "Cocaine Hydrocholoride," whose street name is "cocaine" is a controlled substance.

*State v. Little*, No. L-17-1008, 2018 WL 3493139, at *1 (Ohio Ct. App. July 20, 2018).

**Procedural background**

    *1.   Trial court proceedings.* In December 2015, a Lucas County Grand Jury indicted Little on four counts of trafficking,[1] three counts of

---

[1]     Respectively, the first, second, third, and sixth counts in the indictment alleged trafficking in: cocaine; counterfeit controlled substances; cocaine; and drugs. Doc. 8-1, at 5–7.

possession,[2] and one count each of tampering with evidence, failing to comply with an order or signal of a police officer, and resisting arrest. Doc. 8-1, at 8–10. The trial court arraigned Little in January 2016. *Id*. at 172. Little entered a plea of not guilty. *Id*.

 On the record in September 2016, Little's counsel, Ronnie L. Wingate, indicated that Little was withdrawing his previously entered plea of not guilty and that he had reached a plea agreement with the State of Ohio. Doc. 8-3, at 3.[3] Little "enter[ed] a plea of guilty pursuant to North Carolina versus Alford[4] to" an amended count one, trafficking in cocaine, and count nine, failure to comply with a signal of a police officer. Doc. 8-3, at 3–4; *see* Doc. 8-1, at 12–13. In exchange for Little's plea, the State agreed to "*nolle*[5] the remaining" counts and to recommend that Little's sentence not exceed five years. Doc. 8-3, at 4; *see* Doc. 8-1, at 13.

---

[2]     Respectively, counts four, five, and seven alleged: possession of cocaine; aggravated possession of drugs; and possession of drugs. Doc. 8-1, at 6–8.

[3]     This Court's docket lists the transcript of Little's plea hearing as document 8-2 and the transcript of his sentencing hearing as document 8-3. Review of these documents, however, reveals that they have been transposed. So, despite their labels, document 8-2 is the sentencing hearing transcript and 8-3 is the plea hearing transcript.

[4]     *North Carolina v. Alford*, 400 U.S. 25 (1970).

[5]     *See nolle prosequi*, Black's Law Dictionary (11th ed. 2019) ("A docket entry showing that the … prosecution has abandoned the action. — Often shortened to nolle.").

After the trial court confirmed Little's counsel's understanding of Little's agreement with the State, the court questioned Little under oath. Doc. 8-3, at 4–12. The court confirmed Little's competence, *id*. at 4–5, and that Little intended to enter an *Alford* plea to counts one and nine in exchange for the dismissal of the remaining counts and the State's five-year sentencing recommendation,[6] *id*. at 5. Little then stated that he was satisfied with his counsel, no one forced him to enter his plea or promised him anything to enter it, and he was entering his plea voluntarily. *Id*.

Little next affirmed that he understood the possible punishments, including prison time and fines, and that the court could impose for the counts to which he was pleading. Doc. 8-3, at 6–8. Little also affirmed that he understood that he would be subject to post-release supervision and the possible consequences of violating the terms of his supervised release. *Id*. at 8–10.

The trial court then advised Little of the rights he was giving up by pleading guilty, including the right to: a trial, cross-examine witnesses, subpoena witnesses to testify, not be forced to testify against himself, and "have the State of Ohio prove [his] guilt beyond a reasonable doubt." Doc. 8-3, at 10–11. Little confirmed that although he was "entering a plea of guilty," he

---

[6]     "[A]n '*Alford* plea' refers to a defendant who plead[s] guilty but maintain[s] that he is innocent." *United States v. Tunning*, 69 F.3d 107, 110 (6th Cir. 1995). It's been described as "a judicial oxymoron." *State v. Faraday*, 842 A.2d 567, 588 (Conn. 2004).

was not admitting that he committed the alleged offenses. *Id*. at 11. Instead, he was entering his plea "to avoid the risk of being convicted of a more serious offense and facing a more serious penalty at trial." *Id*. Next, the trial court confirmed that Little understood that he had an automatic right to appeal if the court imposed the maximum possible sentence and that he could appeal regarding mistakes made during his plea hearing. *Id*. at 11–12.

After establishing the above, the trial court directed the prosecutor to state the factual basis for Little's plea. Doc. 8-3, at 12. Relevant to Little's habeas petition, the prosecutor explained:

> Had this matter proceeded to trial the State would have been able to prove beyond a reasonable doubt that as it pertains to count one[,] Cecil Little, on or about the 31st day of October, 2015, in Lucas County, Ohio[,] did knowingly sell or offer to sell a controlled substance, and the drug involved was cocaine or a compound, mixture, preparation or substance containing cocaine, and the amount of the drug involved equaled or exceeded 20 grams but was less than 27 grams of cocaine[,] in violation of section 2925.03(A)(1) & (C)(4)(e) of the Ohio Revised Code, trafficking in cocaine, a felony of the second degree.
>
> . . .
>
> Specifically, … Mr. Little knowingly offered to sell two ounces of cocaine to an undercover vice detective for … $2000…. The … substance was later tested to be 46.23 grams of Benzocaine. However, during the transaction he brought two-and-a-half ounces and thought he was going to buy the entire two-and-a-half ounces. He broke off a piece, which was witnessed by the undercover detective, and that piece that he broke off contained a mixture of Benzocaine and cocaine hydrochloride. After the direct buy … to the vice detective … officers attempted to initiate a traffic stop with Mr. Little, who fled in his vehicle. He then struck a pole and attempted to flee on foot…. [T]hen … he was apprehended…. And … prior to being taken into custody he is seen on dash camera footage throwing what then was recovered

5

as two suspected bags of cocaine. And then a search incident to arrest he had … a pill bottle with Oxycodone and a marijuana bud in his jacket, his coat pocket. He also had the $2000 that was on his person that was given to him by Detective Picking after the direct buy. All of the drugs were tested except for the oxycodone and marijuana, and the results are as follows: There was one piece of duct tape with a plastic bag containing white powder which amounted to 46.23 grams of Benzocaine. Which, then, the following bag, which was another bag containing – excuse me, containing white powder was 14.9 grams of Benzocaine and cocaine hydrochloride. That was the initial portion offered to Detective Picking. Item three is a plastic bag containing white powder which weighed 6.52 grams of Benzocaine.

…

Based on these facts the State asks the Court find the Defendant guilty of trafficking in cocaine, a second degree felony, and failure to comply with an order or signal of a police officer, a felony of the third degree.

Doc. 8-3, at 12–15.

The trial court next "hand[ed] … the plea form" to Little and directed Attorney Wingate to review the form with Little, and if acceptable, to sign it. Doc. 8-3, at 17; *see* 8-1, at 12–13. Wingate stated that he and Little "had an opportunity to review the plea of guilty form pursuant to North Carolina versus Alford. Any questions [Little] entertained were answered and he knowingly, intelligently[,] and voluntarily placed his signature on each side of the document." Doc. 8-3, at 17. On hearing Wingate's statement, the trial court confirmed with Little that he had signed both sides of the plea form and Wingate had, in fact, reviewed the form with Little and answered Little's questions. *Id*. at 17–18. After confirming that Little had no additional

questions, the trial court accepted Little's plea, finding that "[h]e made a knowing, intelligent, voluntary waiver of [his constitutional] rights." *Id*. at 18.

The trial court held a sentencing hearing in December 2016. *See* Doc. 8-2. At the beginning of the hearing, the State moved to amend a "typographical error on the plea form." *Id*. at 3. The State explained that although the form reflected a plea under Ohio Revised Code Section 2925.03(A)(1) and *(C)(4)(c)*, it should have reflected a plea under Ohio Revised Code Section 2925.03(A)(1) and *(C)(4)(e)*. *Id*. Little had no objection to the State's request, which the court granted. *Id*. at 3–4. At the conclusion of the sentencing hearing, the trial court sentenced Little to three years' confinement on count one and two years' confinement on count nine, to run consecutively, followed by three years' post-release supervision. *Id*. at 11–13; *see* Doc. 8-1, at 32. The court ordered that "[t]he remaining counts in the indictment will be nolled." *Id*. at 3; *see* Doc. 8-1, at 33.

*2.    Little's direct appeal.* With the assistance of new counsel, Little filed an appeal in January 2017. See Doc. 8-1, at 36. In a brief filed in support of his appeal, Little raised two assignments of error:

> 1. The trial court erred in refusing to apply the controlling definition of "cocaine" that was in place at the time of sentencing.
>
> 2. The trial court erred in finding appellant guilty of a felony of the second degree following his Alford plea of guilty.

Doc. 8-1, at 44.

In July 2018, the Court of Appeals for the Sixth Appellate District affirmed the trial court's judgment. *See State v. Little*, 2018 WL 3493139, 2018-Ohio-2864 (Ohio Ct. App.).

In November 2018, Little filed pro se notice of appeal with the Ohio Supreme Court, together with a motion for delayed appeal. Doc. 8-1, at 101–110. Over the dissent of three justices, the Ohio Supreme Court granted Little's motion. *State v. Little*, 114 N.E.3d 1206 (2019). In his memorandum in support of jurisdiction, Little raised five issues:

> 1. The Sixth Appellate District Court of Appeals intentionally misconstrued the assignment of error raised on appeal, thereby denying thereby due process of law and denying the right to a fair hearing
>
> 2. The Court of Appeals misapplied federal case law concerning the application of guilty pleas pursuant to the United States Supreme Court holding set forth in North Carolina v. Alford, 400 U.S. 25 (1970).
>
> 3. The court violated the ex post facto law when it applied the decision in Gonzales II which enhanced the sentence for possession in which created a substantial disadvantage to the appellant.
>
> 4. The trial court erred in refusing to apply the controlling definition of cocaine that was placed at the time of sentencing.
>
> 5. The trial court erred in finding appellant guilty of a felony of the second degree following his Alford plea of guilty.

Doc. 8-1, at 130. On April 17, 2019, the Ohio Supreme Court declined to accept jurisdiction. Doc. 8-1, at 160 (Ex. 18) (citing Ohio S. Ct. Prac. R. 7.08(B)(4)); *State v. Little*, 120 N.E.3d 867.

8

3.    *Federal habeas corpus petition*. By operation of the prison-mailbox rule, on November 2, 2020, Little filed a federal habeas corpus petition under 28 U.S.C. § 2254.[7] Doc. 1. He raises a single ground for relief:

> Little's due process rights were violated when the trial court accepted his Alford plea and entered a judgment of conviction to trafficking in cocaine, as the offense could not be constitutionally prosecuted based upon the statute and the controlling interpretation of "cocaine" at the time of his offense, plea, and sentencing. Thus, there was no evidence of factual guilt to the degree of crime for which he was charged or by which his indictment was amended.

Doc. 1, at 5; Doc. 1-1, at 5. The Warden filed a Return of Writ. Doc. 8. Little filed a traverse. Doc. 10.

**Law and Analysis**

1.    *Little's Petition is time-barred*. The Warden argues that Little's petition is barred by the statute of limitations and that Little is not entitled to tolling principles to excuse the time bar. Doc. 8, at 17–24.

---

[7]    An imprisoned petitioner's petition is deemed filed when he places it in his prison's mailing system. *Houston v. Lack*, 487 U.S. 266, 270 (1988). Little's petition reflects that he placed it in the prison mailing system on October 9, 2020. Doc. 1, at 15. But, according to a handwritten notation, it was "[r]eturned and remailed on 11/2/20." *Id*. Arguably, Little did not comply with the requirements necessary to avail himself of the prison-mailbox rule as to his mailing on November 2, 2020. *See* Rule 3(d), Rules Governing Section 2254 Cases in the United States District Courts. Warden Sheldon, however, does not argue that Little failed to comply with the requirements necessary to invoke the prison-mailbox rule. *See*  Doc. 8, at 7. Instead, the Warden concedes that Little "provide[d] [his petition] to prison staff for mailing until November 2, 2020." Doc. 8, at 21. So Little filed his petition on November 2, 2020.

9

The Antiterrorism and Effective Death Penalty Act of 1996 (the 1996 Act),[8] Pub. L. No. 104–132, § 101, 110 Stat. 1214, provides a one-year limitations period in a habeas action brought by a person in custody from a state court judgment.  The limitation period runs from the latest of—

> (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> (C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Subparagraphs (B), (C), and (D) do not apply here. So the question under subparagraph (A) is when Little's judgment became final. As noted, the Ohio Supreme Court granted Little's motion for delayed appeal. *Little*, 114 N.E.3d 1206. The court's decision restored Little's direct appeal. As a result, Little's

---

[8]    Because initialisms and acronyms help the writer but hinder the reader, I'm using words instead to describe the Act. *See Mutawakkil v. Huibregtse*, 735 F.3d 524, 526 (7th Cir. 2013) ("This leaves the statute, which often goes by the unpronounceable initialism RLUIPA but which we call 'the Act' so that the opinion can be understood by normal people."); *see also See Del. Riverkeeper Network v. FERC*, 753 F.3d 1304, 1320-21 (D.C. Cir. 2014) (Silberman, J., concurring).

conviction was not yet *final* under 28 U.S.C. § 2244(d)(1)(A) at that time. *See Jimenez v. Quarterman*, 555 U.S. 113, 121 (2009) ("where a state court grants a criminal defendant the right to file an out-of-time direct appeal during state collateral review, but before the defendant has first sought federal habeas relief, his judgment is not yet 'final' for purposes of § 2244(d)(1)(A)").

On April 17, 2019, the Ohio Supreme Court declined to accept jurisdiction of Little's appeal. Doc. 8-1, at 160. Little's conviction was *final* and the limitations period began to run 90 days later—July 16, 2019—after the expiration of the time to file a petition for a writ of certiorari with the United States Supreme Court. *See Clay v. United States*, 537 U.S. 522, 528 n.3 (2003) ("The Courts of Appeals have uniformly interpreted 'direct review' in § 2244(d)(1)(A) to encompass review of a state conviction by this Court."). So the limitations period began to run on July 16, 2019, and Little had until one year later—July 16, 2020—to file his petition with this Court.[9] Little, however, did not file his petition until November 2, 2020, over 100 days after the statute of limitation expired.

Little anticipates the Warden's statute-of-limitations-argument and in his petition says that due to the Covid-19 pandemic, the Ohio Supreme Court on March 27, 2020, "issued a state-wide tolling order and Federal Courts were likewise limiting operations." Doc. 1, at 13; *see In re Tolling of Time*

---

[9]     In arguing that Little's petition is untimely, the Warden neglects to include in his calculation the 90-day period Little was afforded in which to seek certiorari. *See* Doc. 8, at 21.

*Requirements Imposed by Rules Promulgated by Supreme Ct. & Use of Tech.*, 2020-Ohio-1166, 158 Ohio St. 3d 1447 (Ohio 2020). He adds that his institution "instituted a lockdown," which resulted in suspended access to the law library and legal material, "not to mention another inmate" who "had possession of [Little's] legal work." Doc. 1, at 13–14. Little says that but for the lockdown, he would have filed his petition by April 17, 2020. *Id*. at 14. Based on these assertions, Little argues that he is entitled to equitable tolling. *Id*. He concludes by arguing that because he claims actual innocence, failing to consider his petition would "result in a manifest miscarriage of justice." *Id*.

The Warden argues that Little is not entitled to equitable tolling. Unfortunately, the Warden appears to have missed the basis for Little's equitable tolling argument; the Warden he does not discuss Little's Covid-19-related claims and responds in a general manner to what Little "may claim." Doc. 23, at 22.

The one-year statute of limitations in Section 2244(d) is not jurisdictional and is "subject to equitable tolling in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 645 (2010). But to benefit from equitable tolling, a habeas petitioner must "show[] '(1) that he has … pursu[ed] his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id*. at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). "Equitable tolling is granted sparingly and is evaluated on a case-by-case basis, with the petitioner retaining the 'ultimate burden of persuading

12

the court that he or she is entitled to equitable tolling.'" *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 462 (6th Cir. 2012) (quoting *Ata v. Scutt*, 662 F.3d 736, 741 (6th Cir. 2011)).

As noted, Little relies on restrictions associated with the COVID-19 pandemic. And there is some support for Little's argument. "[O]n March 9, 2020, Ohio Governor Mike DeWine declared a state of emergency due to the COVID-19 outbreak." *Pickens v. Shoop*, No. 1:19-CV-558, 2020 WL 3128536, at *1 (S.D. Ohio June 12, 2020). Four days later, "President Trump declared a state of emergency as a result of the rampant spread of COVID-19." *Milman v. Fieger & Fieger, P.C.*, 58 F.4th 860, 863 (6th Cir. 2023). As Little notes, the Ohio Supreme Court "issued a state-wide tolling order" two weeks later. Doc. 1, at 13.

Moreover, during the early months of the pandemic, some courts recognized that habeas petitioners *might* be able to base their claim for equitable tolling on COVID-19-based restrictions. *See Fitzgerald v. Shinn*, No. 19-cv-5219, 2020 WL 3414700, at *2 (D. Ariz. June 22, 2020); *Pickens v. Shoop*, No. 1:19-CV-558, 2020 WL 3128536, at *3 (S.D. Ohio June 12, 2020). And at least one court granted *prospective* tolling. *Dunn v. Baca*, No. 3:19-cv-702, 2020 WL 2525772, at *2 (D. Nev. May 18, 2020).

But as the pandemic progressed, courts were less receptive to bare COVID-based equitable tolling arguments. *See United States v. Sloan*, No. 20-CR-285, 2022 WL 4080631, at *3 (N.D. Ohio Sept. 6, 2022) (considering a

13

petition under 28 U.S.C. § 2255), *appeal docketed*, No. 22-3808 (6th Cir. Sept. 26, 2022); *United States v. West*, 578 F. Supp. 3d 962, 966–67 & n.2 (N.D. Ohio 2022) (citing cases). As some courts noted, "[e]ven if prison law libraries [were] closed due to the current COVID-19 pandemic, prison mail systems [were] not." *West*, 578 F. Supp. 3d at 966 n.2 (quoting *United States v. Caldwell*, No. 2:17-cr-774, 2020 WL 2849997, at *2 (S.D. Tex. June 1, 2020)). And courts took note of the fact that "federal courts around the country … continued to receive pro se prisoner motions and habeas actions throughout the pandemic." *Id*. So, as before the pandemic, "[t]he bottom line" remains "that the COVID-19 pandemic does not automatically warrant equitable tolling for a petitioner who seeks it on that basis. The petitioner must establish that he was pursuing his rights diligently and that the COVID-19 pandemic specifically prevented him from filing his motion." *United States v. Henry*, No. 2:17-cr-180, 2020 WL 7332657, at *4 (W.D. Pa. Dec. 14, 2020); *see Pryor v. Erdos*, No. 5:20-cv-2863, 2021 WL 4245038, at *9 (N.D. Ohio Sept. 17, 2021) ("a petitioner seeking tolling" based on COVID-19 restrictions "must still demonstrate fact-specific circumstances related to the pandemic that hindered his ability to timely file a habeas petition"), *certificate of appealability denied*, No. 21-3908, 2022 WL 1021911 (6th Cir. Mar. 31, 2022), *cert. denied*, 143 S. Ct. 272 (2022).

14

Here, Little says that his institution's lockdown denied him access to the law library and legal material, and that "another inmate" had possession of his legal work. Doc. 1, at 13–14. This is the sort of bare-bones argument that courts have rejected because the argument does not "show that the pandemic 'specifically prevented [the petitioner] from filing his'" petition. *Sloan*, 2022 WL 4080631, at *2 (quoting *Henry*, 2020 WL 7332657, at *4); *cf. Andrews v. United States*, No. 17-1693, 2017 WL 6376401, at *2 (6th Cir. Dec. 12, 2017) ("Courts have consistently held that general allegations of placement in segregation and lack of access to legal materials are not exceptional circumstances warranting equitable tolling, especially where a petitioner does not sufficiently explain why the circumstances he describes prevented him from timely filing a habeas petition."); *Pryor*, 2021 WL 4245038, at *10 (relying on *Andrews*).

What's more, even if the lockdown affected Little's ability to access the law library for some time from March 2020 onward, Little does not explain what he was doing from April 2019—when the Ohio Supreme Court issued its ruling—until March 2020, or provide a reason that he couldn't have filed before March 2020. This omission dooms his claim. *See West*, 578 F. Supp. 3d at 967 ("West's failure to demonstrate that he diligently pursued his claims (or even took any action) before the COVID-19 health crisis took hold is fatal to his timeliness argument."). Further, Little concedes that notwithstanding his institution's lockdown, he was afforded two hours each day on a "prison-issued

tablet" to access a legal database. Doc. 1, at 14. But he doesn't explain why that two-hour daily opportunity was insufficient to allow him to timely file his petition. Finally, Little doesn't explain why COVID-based restrictions would have prevented him from at least filing "a 'protective petition,' *i.e.*, an initial but incomplete petition," to be followed by an amended one. *See Fitzgerald*, 2020 WL 3414700, at *5.

Little's petition was untimely and he has not carried his burden to show that he should benefit from equitable tolling. His "bare assertions that the pandemic limited his access to the law library and help from others don't merit equitable tolling." *Sloan*, 2022 WL 4080631, at *3. For those reasons, I recommend that Little's petition be denied as untimely.

2. *Procedural default bars review of Little's claim.* Under the 1996 Act, habeas petitioners must meet certain threshold, procedural requirements to have their claims reviewed in federal court. *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 430 (6th Cir. 2006). "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001). Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Failure to exhaust applies when state remedies are "still available at the time of the federal petition." *Id.* (quoting *Engle v. Isaac*, 456 U.S. 107, 125

16

n.28 (1982)). But when state court remedies are no longer available, procedural default rather than exhaustion applies. *Id.*

      2.1    *Exhaustion.* A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A). A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action. 28 U.S.C. § 2254(b),(c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) ("Federal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts") (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)). A constitutional claim for relief must be presented to the State's highest court to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). And a habeas petitioner must present both the factual and legal underpinnings of the claims to the state courts. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). This means that the petitioner must present the claims to the state courts as federal constitutional issues and not just as issues arising under state law. *See*, *e.g.*, *Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987); *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987).

      2.2    *Procedural default.* Procedural default may occur in two ways. *Williams*, 460 F.3d at 806. First, a petitioner procedurally defaults a

claim by failing "to comply with state procedural rules in presenting [the] claim to the appropriate state court." *Id.* In *Maupin v. Smith*, the Sixth Circuit provided four prongs of analysis to be used when determining whether a claim is barred on habeas corpus review due to a petitioner's failure to comply with a state procedural rule: whether (1) there is a state procedural rule applicable to the petitioner's claim and whether the petitioner failed to comply with that rule; (2) the state court enforced the procedural rule; (3) the State procedural rule is an adequate and independent state ground on which the State can foreclose review of the federal constitutional claim; and (4) the petitioner can demonstrate cause for failing to follow the rule and actual prejudice by the alleged constitutional error. 785 F.2d 135, 138 (6th Cir. 1986); *see also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the State procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Courts "will not consider an issue of federal law on direct review from a judgment of a state court if that judgment rests on a state-law ground that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision." *Harris v. Reed*, 489 U.S. 255, 260 (1989). "In Ohio, [the] failure to raise a contemporaneous objection to error in the trial court 'is an adequate and independent state ground to bar federal habeas review absent a

showing of cause and prejudice.'" *Mason v. Brunsman*, 483 F. App'x 122, 130–31 (6th Cir. 2012) (quoting *Scott v. Mitchell*, 209 F.3d 854, 867 (6th Cir. 2000)). And an Ohio appellate court's plain-error review of an alleged error does "not constitute a waiver of the procedural default." *Id.* at 130–31; *see Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001) ("we view a state appellate court's review for plain error as the enforcement of a procedural default").

The second way "a petitioner may procedurally default a claim [is] by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848). "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id.* While the exhaustion requirement is satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson*, 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state court constitutes a procedural default of those claims that bars federal court review. *Williams*, 460 F.3d at 806.

To overcome a procedural bar, a petitioner must show cause for the default and actual prejudice that resulted from the alleged violation of federal law that forms the basis of his or her challenge, or that there will be a fundamental miscarriage of justice if the claims are not considered. *Coleman*, 501 U.S. at 750.

2.3 *Little's claim is procedurally defaulted.* Relying on Ohio's contemporaneous-objection rule, the Warden alternatively argues that Little's claim is procedurally defaulted. Doc. 8, at 14–16. I agree. Even putting aside the untimeliness of Little's petition, procedural default bars review of it.

Here, the Ohio court of appeals applied and enforced the state's contemporaneous-objection rule. *See Little*, 2018 WL 3493139, at *3–6. Absent cause and prejudice, then, Little's claim is defaulted. *Scott*, 209 F.3d at 867.

Little, however, doesn't attempt to show cause. Instead, he claims that because he has shown that he is "actually innocent," review is necessary to prevent a fundamental miscarriage of justice. Doc. 1, at 14; see Doc. 10, at 5. But Little "has not presented new evidence of his innocence." *Hodges v. Colson*, 727 F.3d 517, 532 (6th Cir. 2013). So his "claim is barred." *Id.* Little's petition should alternatively be denied on this basis.

3. *Little's Petition should be denied on the merits.* Assuming that Little's petition is timely and that his claim is not procedurally defaulted, to obtain relief under 28 U.S.C. § 2254, he must show either that the state court's decision (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" ("contrary to" clause); or (2) "resulted in a decision that was based on an unreasonable determination of the facts in

light of the evidence presented in the state court proceeding" ("unreasonable application" clause). 28 U.S.C. § 2254(d).

Under the *contrary to* clause, a federal habeas court may grant a writ if the state court "arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or [based on] a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–413 (2000).

Under the *unreasonable application* clause, a federal habeas court may grant the writ "if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "Clearly established federal law" refers to the holdings, not dicta, of the Supreme Court's decisions as of the time of the relevant state court decision, and legal principles and standards flowing from Supreme Court precedent. *Id.* at 412; *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). A state court is not required to cite Supreme Court precedent or reflect an awareness of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts" such precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002); *Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005). If the Supreme Court has not addressed the petitioner's specific claims, a reviewing district court cannot find that a state court acted *contrary to*, or *unreasonably applied*, Supreme Court precedent or clearly established federal law. *Carey v. Musladin*, 549 U.S. 70, 77 (2006); *see White v. Woodall*, 572 U.S. 415, 426 (2014) ("Section 2254(d)(1) provides a remedy for instances

in which a state court unreasonably applies this Court's precedent; it does not require state courts to *extend* that precedent or license federal courts to treat the failure to do so as error.").

In determining whether the state court's decision involved an *unreasonable application* of law, the court uses an objective standard. *Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas review so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011). "A state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

Little argues that his due process rights were violated because the trial court accepted his *Alford* plea. He says that he "sold 46.23 grams of benzocaine," which "is a legal substance in Ohio and … there was no cocaine

contained in the package sold to agents."[10] Doc. 1-1, at 7; *see id.* at 10 ("the prosecution indicted Little for a sham offense").

Little doesn't precisely explain how the Ohio appellate court flunked the *contrary to* or *unreasonable application* prongs of 28 U.S.C. § 2254(d). The Supreme Court has recognized that like any constitutional right, the right to trial can be waived. In *Alford*, it held that a defendant "may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even [though] he is unwilling or unable to admit his participation in the acts constituting the crime." 400 U.S. at 37. Before accepting an *Alford* plea, a court must determine that "there is a factual basis for the plea." *Id.* at 38 n.10

A plea under *Alford* "is a guilty plea in all material respects." *United States v. Tunning*, 69 F.3d 107, 111 (6th Cir. 1995). To comply with the Due Process Clause, a guilty plea must be "voluntary and knowing." *Boykin v. Alabama,* 395 U.S. 238, 243 n.5 (1969); *see King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994). "A state court's determination that a guilty plea was valid is a factual finding entitled to a presumption of correctness on federal habeas

---

[10]     Little also complains about the Ohio court of appeals' application of its precedent. *See* Doc. 1-1, at 10 (citing *State v. Gonzales*). But the Ohio court explained that as a matter of state law, *Gonzales* did not apply. *Little*, 2018 WL 3493139, at *4. This aspect of Little's claim is not cognizable. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States"); *see also Austin v. Jackson*, 213 F.3d 298, 300 (6th Cir. 2000) (an alleged violation of state sentencing laws is not cognizable on federal habeas review).

review, rebuttable only by clear and convincing evidence. *Stewart v. Morgan*, 232 F. App'x 482, 490 (6th Cir. 2007).

"A prisoner who has entered a guilty plea … and who later attempts to attack his judgment of conviction collaterally through a federal habeas corpus action is limited to raising only the issue of whether his guilty plea was knowing and voluntary." *Cubic v. Warden of Marion Corr. Inst.*, No. 12-cv-1472, 2014 WL 1270586, at *2 (N.D. Ohio Mar. 26, 2014). "A plea of guilty which is voluntarily and intelligently made satisfies the requirements of the Due Process Clause." *Id.* A defendant who pleads guilty waives "all 'non-jurisdictional defects,'" *i.e*, those "claims not logically inconsistent with the issue of factual guilt, as well as the right to contest the factual merits of the charges against him." *United States v. Freed*, 688 F.2d 24, 25 (6th Cir. 1982).

The Ohio court of appeals said nothing inconsistent with these principles. Indeed, it noted the need "to determine whether an Alford plea has been voluntarily and intelligently made," and recited the Ohio Supreme Court's guidance about how to reach that determination. *Little*, 2018 WL 3493139, at *5. It also explained that the State is required to provide a factual basis for the plea and noted that "the State complied with the mandate that a proffer be made so as to provide a basis for a finding of guilt despite the protestations of innocence." *Id.* The court also reviewed the plea colloquy, discussed above, and confirmed the reason that Little entered his plea, that Little was satisfied with Attorney Wingate, and that Little believed that

24

entering an *Alford* plea was in his best interest. *Id*. Finally, the Ohio court of appeals noted that the trial court "engag[ed] in an extensive colloquy to [e]nsure that Little was fully aware of his constitutional rights and that he understood the consequences of his plea." *Id*. Nothing the Ohio court said is *contrary to* any conclusion "reached by the [United States Supreme] Court on a question of law or [based on] a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-413.

Nor does the court's decision reflect an "unreasonable application" of a "governing legal principle from th[e] [Supreme] Court's decisions." *Id*. at 413. Little cites several Supreme Court decisions in general terms. But none aids his cause. Rather, it is apparent that Little ignores the fact that by entering his plea, he confessed that he was guilty. So he admitted that, as the prosecutor stated, a portion of the mixture that he knowingly sold *or offered to sell* contained cocaine. Doc. 8-3, at 12; *see id*. at 13 ("Little knowingly offered to sell two ounces of cocaine to an undercover vice detective for the amount of $2000"). Whether, as he now claims, he only provided his buyer with a portion of the mixture that did not contain cocaine is legally and factually irrelevant. The fact remains that he *offered to sell* "a compound, mixture, preparation[,] or substance [that] contain[ed] cocaine." Doc. 8-3, at 12, 13. And that's all the statute of his conviction requires. *See* Ohio Rev. Code § 2925.03(A)(1),

25

(C)(4)(e).[11] Little has not carried his burden by clear and convincing evidence to rebut the presumption that the Ohio appellate court correctly determined that the plea was valid. *Stewart*, 232 F. App'x at 490; *see Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993) ("When a defendant … brings a federal habeas petition challenging his plea, the State generally satisfies its burden" "to show that the plea was voluntary and intelligent" "by producing a transcript of the state court proceeding.").

In his traverse, Little says that he objected during his sentencing to the court's acceptance of his plea. Doc. 10, at 4–5 (quoting 8-2, at 9). But Little's sentencing transcript does not support this assertion. Instead, it shows that Little addressed the court before it announced his sentence. Doc. 8-2, at 9. He apologized and then asked the court to "look at the evidence very close and just impose justice the right way here in court. I didn't traffic 20 grams of cocaine. And can you please take that into consideration." Doc. 8-2, at 9. Notably, Little did not move to withdraw his plea. So, in context, Little's statement simply concerns his request for leniency.

In relation to his challenge to the trial court's acceptance of his plea, Little *initially* disclaimed any challenge to Attorney Wingate's effectiveness. Doc. 1-1, at 6. In his traverse, however, Little belatedly blames his counsel,

---

[11]     Little quotes the statute in a memorandum in support of his petition. Doc. 1-1, at 9. His emphasis on the word *sell* but not the phrase *or offer to sell*, *id.*, suggests that he does not recognize that his offer to sell a mixture containing cocaine violated the statute, regardless of what he did after completing the offer. *See State v. Scott*, 432 N.E.2d 798, 799 (Ohio 1982).

claiming that he was "misled by his counsel," who "was obviously confused." Doc. 10, at 4. Little's attempt to blame counsel comes too late. He can't raise a new claim in his traverse, especially one he previously disavowed. *Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005). And he can't raise a claim now that he didn't raise in his filings before the Ohio courts. *Williams*, 460 F.3d at 806 ("[I]f an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised on direct appeal, the claim is procedurally defaulted").

Finally, contrary to Little's assertion, Doc. 1-1, at 11, Doc. 10, at 5, there is no basis to conclude that a structural error infected his conviction. Little has not demonstrated error, let alone an error that would qualify as structural. *See Weaver v. Massachusetts*, 137 S. Ct. 1899, 1907–08 (2017) (discussing structural errors).

## Conclusion

For the reasons set forth above, I recommend that Little's petition be denied.


Dated: March 6, 2023

　　　　　　　　　　　　　　　　　*/s/ James E. Grimes Jr.*　　　　　
　　　　　　　　　　　　　　　　　James E. Grimes Jr.
　　　　　　　　　　　　　　　　　U.S. Magistrate Judge




## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1).  Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.  *See Berkshire v. Beauvais*, 928 F.3d 520, 530-531 (6th Cir. 2019).